[Civ. No. 15761.   First Dist., Div. One.   Apr. 12, 1954.]

LOUIS PETE, JR., as Administrator, etc., Appellant, v. ANNIE S. HENDERSON, as Administratrix, etc., Respondent.

Louis Pete, Jr., in pro. per., for Appellant.

Vaughns & Yonemura for Respondent.

PETERS, P. J.—The plaintiff, Louis Pete, Jr., appearing in propria persona, is administrator of the estate of his father. The defendant is the administratrix of the estate of John Henderson, a deceased attorney. This action was brought by plaintiff, in his representative capacity, against Henderson, prior to his death, for damages alleged to have been caused by the negligence of the attorney in failing to file a notice of appeal in an action in which a judgment for $1,660 had been rendered against plaintiff, and which judgment plaintiff was forced to pay without having it reviewed on appeal. The prayer requests as damages the $1,660 so paid, and $150 paid by plaintiff in advance to Henderson as a fee to take the appeal. Punitive damages are also prayed for, but this demand was abandoned during the trial.

At the close of plaintiff's case defendant moved for a nonsuit on the ground that the plaintiff had failed to prove a cause of action. Defendant conceded liability for the $150 paid to the attorney to prosecute the appeal, but contended no other item of damage had been proved. The trial court ruled not only that there was a failure of proof, but that, as a matter of law, no other damages than the attorney's

fees could be recovered in this type of action. Accordingly, the trial court found that, although defendant was negligent, plaintiff's damages were limited to the $150 paid as a fee for taking of the appeal. Judgment was entered in favor of the plaintiff in that amount. Plaintiff appeals.

The facts are simple. Plaintiff, as administrator, retained Henderson to represent him in an action in which he was a defendant. Judgment in that action was entered against appellant for $1,660. Appellant then employed Henderson to prosecute an appeal from that judgment, and, pursuant to agreement, paid him $150 for that purpose. Henderson filed the notice of appeal one day late. The finding that Henderson was negligent in this respect is supported by the evidence, and is not challenged by respondent. Appellant thereupon was forced to and did pay the judgment creditor $1,660, the amount of the judgment. Thereupon, this action was instituted against Henderson, who was then living. Henderson died during the pendency of the action and respondent, as administratrix of his estate, was substituted in his place.

At the close of appellant's case respondent moved for a nonsuit on the ground of failure of proof. During the discussion of this motion, the trial judge, on numerous occasions, emphatically stated that he would not permit any discussion or evidence relating to the merits of the appeal in the first action. It was his position that the judgment in the first action was final, that such judgment could only be upset by an appeal, and that he, as a superior court judge, was without power to consider what might have happened to that appeal, had one been properly perfected.

These rulings of the trial court were incorrect. ▉ A lawyer is required to exercise due care in the handling of the affairs of his client and must perform his professional duties to the best of his ability. (*Clark* v. *State Bar*, 39 Cal.2d 161 [246 P.2d 1].) ▉ If he does not do so, he is liable to his client for such failure if damage results. His liability, as in other negligence cases, is for all damages directly and proximately caused by his negligence. (See cases collected 6 Cal.Jur.2d p. 324, § 146.)

In the present case the attorney was negligent in failing to file the notice of appeal. That is admitted. The question is, what damages were proximately caused by that negligence? Obviously, the $150 fee paid to the attorney to take the appeal was a proper item of damage. This was allowed and is not in question on this appeal. But that is not the only item

of damage that appellant may have suffered. If the judgment against him for $1,660 was erroneous, to the extent that it would have been reversed on appeal under circumstances that would not require him to pay it, he has suffered serious damage indeed. That damage was directly and proximately caused by the negligence of the attorney. If proof of the required facts can be made, appellant should be able to recover the damage so suffered.

The trial judge was of the opinion, and so ruled, that he had no power to rule on the propriety of another trial judge's judgment which had become final. It was his theory that such proof would constitute a collateral attack on a final judgment and that this is not permitted by the law. Such proof would not constitute a collateral attack on the judgment. The judgment in the first action, as between the parties to that action, is final. The purpose of the present action is not to reverse that judgment. It has been finally determined that the judgment creditor in the first action is entitled to that money. The appellant is not trying to gain recoupment from that judgment creditor. He is seeking to recover damages from his attorney, who was not a party to the first action, for his negligence in permitting the judgment to become final without taking an appeal. If he can prove that the judgment in that case was erroneous and would have been reversed, he should be permitted to do so. In that event he has proved damage proximately caused by the negligence. If this were not the rule, attorneys would be placed in a special class, in that they, unlike other persons, would be freed from liability for certain damages directly and proximately caused by their negligence. There is no reason for placing them in such a special class.

It is true that this result involves certain difficulties, not the least of which is to try and convince one trial judge that another judge of equal jurisdiction rendered such an erroneous judgment that it would. have been reversed on appeal, had one been taken. But the fact that it may be difficult to make such proof is no ground to deny the right to present such proof if it can be made. The Supreme Court, on at least one occasion, has held that a trial judge may be called upon to determine whether an appeal, had it been perfected, would have been successful. In *Estate of Hanley*, 23 Cal.2d 120 [142 P.2d 423, 149 A.L.R. 1250], the precise point decided was that the time for taking an appeal was jurisdictional, and that between the parties there can be no excuse for the

late filing of an appeal. But the author of the majority opinion in that case was careful to point out that if a party is prevented from taking his appeal by the fraud or duress of the other party, he may maintain an equitable action against the other party. (P. 124.) In such equitable action the trial court would be compelled to determine the merits of the dismissed appeal. (See dissenting opinion at p. 128.) That is precisely the type of issue involved in the instant case.

Although no California case seems to have been decided directly involving the admissibility of such proof in an action between attorney and client, there is language and reasoning in *Gambert* v. *Hart*, 44 Cal. 542, and *Drais* v. *Hogan*, 50 Cal. 121, that support the conclusions above set forth.

The rulings of the trial court on these issues were clearly erroneous. Does this require a reversal? We think that it does. It is true that a plaintiff in such a case must plead and prove that the appeal, had it been taken, would have resulted in a reversal. Appellant neither pleaded nor proved this fact. This would ordinarily be fatal and would require an affirmance. (*Feldesman* v. *McGovern*, 44 Cal.App.2d 566 [112 P.2d 645] ; *Hays* v. *Ewing*, 70 Cal. 127 [11 P. 602].) But there are several factors here existing that make that rule inapplicable to the instant case.

In the first place, the appellant, a layman, has appeared in this action in propria persona, stating to the trial court that he found it impossible to secure a lawyer who would handle the case against Attorney Henderson. ▓▓▓ While the fact that a layman litigant elects to represent himself does not relieve him of the duty of observing legal rules, and certainly does not excuse him from a failure of proof, that fact should be considered in determining whether, in a situation where the trial court has discretion to act to relieve the lay litigant from his default, that discretion should be exercised.

Here the trial court, on a motion for a nonsuit, ruled not only that there was a failure of proof, but that, as a matter of law, no proof could be offered on the issue. ▓▓▓ It is well settled that "one of the chief objects subserved by a motion for nonsuit is to point out the oversights and defects in plaintiff's proofs, so he can supply if possible the specified deficiencies." (See cases cited 9 Cal.Jur. p. 563, § 39.) To that end, in a proper case, the trial court may permit the plaintiff to amend his complaint and to reopen the case and

make the required proof. (*Manford* v. *Coats,* 6 Cal.App.2d 743 [45 P.2d 395].) Indeed, in a proper case, it becomes an abuse of discretion to refuse to do so. (*Low* v. *Warden,* 70 Cal. 19 [11 P. 350].) This is such a case. ▮ Here the plaintiff, in propria persona, presented his case. Counsel for defendant moved for a nonsuit, admitting Henderson's negligence and liability of his estate for the fee, but urged a failure of proof as to the $1,660 claimed damage. The trial judge ruled that there was no way known to the law that plaintiff could prove any damage, other than the amount of the fee, proximately resulting from Henderson's negligence. He fully stated, several times, that he must conclusively presume the validity and propriety of the judgment in the first action, and lacked legal power to pass upon the question as to whether it would have been reversed had the appeal been perfected. The trial court unequivocally told appellant that any offer of proof of the transcript of the first proceeding would be denied, not in the exercise of discretion, but because such proof was inadmissible. Under such circumstances the ends of justice require that the judgment, predicated on these erroneous rulings, be reversed, and appellant be given the opportunity to amend his complaint, and to prove, if he can, that, had the judgment in the first action properly been appealed, it would have been reversed.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.