Filed 3/16/15  Wilkerson v. Los Angeles City Fire Dept. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| LESLIE WILKERSON, | B248336 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC449758) |
| v. | |
| LOS ANGELES CITY FIRE DEPARTMENT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Reversed and remanded.

McNicholas & McNicholas, Matthew S. McNicholas and Alyssa K. Schabloski; Esner, Chang & Boyer and Stuart B. Esner, for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Gregory P. Orland, Deputy City Attorney, for Defendants and Respondents City of Los Angeles and Jamie Moore.

_____

Leslie Wilkerson appeals from a judgment of dismissal entered after the court sustained the demurrer of respondents City of Los Angeles (the City)[1] and Captain Jaime Moore without leave to amend. He argues that his claims for race discrimination, retaliation, and harassment under the Fair Employment and Housing Act (Gov. Code, §12940 et seq., FEHA) are timely. Appellant has shown a reasonable possibility of amending the complaint to allege that the statute of limitation was equitably tolled while he pursued internal remedies within the Los Angeles Fire Department (LAFD). We reverse the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The operative fourth amended complaint alleges the following facts: Appellant, an African-American, works as an arson investigator at the LAFD. On May 30, 2007, he was reprimanded by Captain Mike Rueda for being late to work. Appellant complained that he was being treated differently than David Liske, a Caucasian arson investigator, who had not been reprimanded for being late the previous month and had been promoted to senior arson investigator despite his tardiness and concerns over his conduct. As a result of his complaint, appellant was placed on sick leave, and Rueda and Moore ordered him to submit to a psychological evaluation in order to return to work. He eventually was allowed to go back to work without the evaluation, but he spent several days on unnecessary sick leave, and the reprimand became part of his record. In June and August 2007, appellant discussed instances of "harassment and unfair treatment" with an equal employment opportunities representative.

While appellant was on vacation in December 2007, Moore requested that arson investigator Justin Davis provide a telephone number associated with appellant but used at the time by his daughter. When Davis refused, Battalion Chief John Miller ordered

---

[1] Although both the Los Angeles Fire Department and the City are named as defendants, the City alone is the proper defendant.

him to give out the number, and appellant and his family members were improperly interrogated.

In early 2008, Miller, Moore, and Rueda ordered appellant to perform a drill on a radiation monitor in front of other LAFD members. Because the drill was originally scheduled on appellant's day off, he was required to make up for it. When appellant noted he had not received ten-hour training on the monitor, Rueda responded, "'I guess we're going to have a ten hour drill.'" Although Rueda did not attend the entirety of the drill, he later ordered appellant to repeat it because his performance had been inadequate. Generally, non-African-American investigators were assigned drills on familiar equipment while African-American investigators were ordered to perform drills on equipment with which they were unfamiliar.

In June or July 2008, Moore told arson investigators Liske and Frank Oglesby, "'I am going to fuck with those investigators every chance I get.'" He made the remark in reference to appellant. On October 15, appellant and Davis, his partner, responded to the scene of a fire started by a crime suspect during a police stand-off. A SWAT team had used tear gas to subdue the suspect, and large fans ("blowers") had been placed next to the front door to remove remnants of the gas before fire fighters and investigators could go in. Moore ordered the blowers turned off when he heard over the radio that appellant's unit was being called to the scene. He told the blower operator, "'[W]atch me fuck with these guys.'" When appellant entered the building, Moore told the operator to "'time him to see how long he stays there.'" Before he could leave the building, appellant was exposed to "hot gas," a dangerous superheated form of tear gas. The blowers were later turned on at his request, and he and Davis went back in to complete the investigation. As a result of this incident, appellant developed asthma, which has affected his performance as an arson investigator. He also has suffered from emotional distress and anxiety.

In December 2008, appellant filed a complaint with the Professional Standards Division of the LAFD, based on instances of "harassment and unfair treatment" from

3

December 2007 through July 2008. In January 2009, he amended the original complaint to include instances of "harassment and unfair treatment" from May 30, 2007 to October 15, 2008. In April 2009, he received notice that his complaint had been referred to the Internal Affairs Unit of the LAFD. Three to six months later, he was notified that the Professional Standards Division had closed its case. He was not updated on the status of the Internal Affairs investigation. In February 2010, appellant learned Moore had ordered that the blowers be turned off on purpose.

In March 2010, Rueda falsely complained to the Professional Standards Division that appellant had raised his voice. Rueda's complaint was investigated and closed without any action against appellant.

In June 2010, appellant filed complaints with the Department of Fair Employment and Housing (DFEH), claiming discrimination, harassment, retaliation and failure to prevent discrimination and harassment. He filed his original complaint in this case in November 2010, naming the City, the LAFD, Chief Miller and Captains Rueda and Moore as defendants. Miller and Rueda filed a series of demurrers to appellant's first three amended complaints, challenging their sufficiency to hold them personally liable. In their demurrer to the third amended complaint, they alleged for the first time that appellant had not complied with the one-year limitation period of FEHA. (Gov. Code, § 12960, subd. (d).) The court sustained the demurrer without leave to amend on the ground that Miller and Rueda could be liable only for personally harassing appellant, and the allegations against them did not state a claim for actionable harassment. The court denied appellant's motions for reconsideration and to file a fourth amended complaint, and dismissed Miller and Rueda from the action.

While appellant's motion for reconsideration was pending, respondents filed a motion for judgment on the pleadings based on the FEHA limitation period. Since the third amended complaint did not include the date of appellant's DFEH complaints, respondents asked the court to take judicial notice that those complaints were stamped received on June 23, 2010. In opposition, appellant cited the extension of the limitation

4

period to three years for violations of Civil Code section 51.7, which prohibits violence against a person on account of a protected characteristic, such as race, if the victim is unaware of the identity of the perpetrator during that period. (Gov. Code, § 12960, subd. (d)(3).) Appellant also relied on the continuing violation doctrine and proposed an amendment to allege facts relevant to delayed discovery and equitable tolling. The trial court took judicial notice of appellant's DFEH complaints and granted respondents' motion, but gave appellant leave to amend.

Appellant timely filed his fourth amended complaint. Respondents demurred, claiming appellant had not alleged a continuing violation or a violation of Civil Code section 51.7. In opposition, appellant relied on the doctrine of equitable tolling. The court agreed with respondents that appellant had sought to have others disciplined for alleged misconduct rather than pursuing "an internal remedy for his injuries." The court sustained the demurrer without leave to amend. It denied appellant's motion for reconsideration and for leave to file a fifth amended complaint. The court entered judgment dismissing the case against respondents. This timely appeal followed.

## DISCUSSION

"When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. [Citations.]" (*Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 221.) We review the complaint independently to determine whether it states a valid cause of action, accepting factual allegations to be true. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) The denial of leave to amend is reviewed for abuse of discretion. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) Generally, it is "an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. [Citation.]" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226.)

5

Initially, we disagree with respondents that appellant's claims are largely precluded by the final judgment dismissing Miller and Rueda. In a multiparty lawsuit, a judgment that leaves no issue to be determined as to one party is immediately appealable. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437.) If not appealed, the judgment is binding in the same case on issues it determined. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638.) Here, the court dismissed Miller and Rueda because supervisors cannot be personally liable for discrimination, retaliation, or harassment by others; they can only be liable for harassment they personally commit if that harassment is severe or pervasive. (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1164; *Reno v. Baird* (1998) 18 Cal.4th 640, 645–646; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326). The court ruled that the only act giving rise to a harassment claim was Moore's decision to expose appellant to tear gas, while Miller and Rueda's conduct was "merely . . . supervisory" and not actionable harassment. The court was not asked to, nor did it determine, whether Miller and Rueda's conduct gave rise to claims for discrimination or retaliation. The judgment has no binding effect as to those claims.

We turn to the principal issue on appeal—the timeliness of appellant's FEHA claims. As a prerequisite to a civil action for damages, FEHA requires that an administrative complaint with DFEH be filed within one year "from the date upon which the alleged unlawful practice . . . occurred." (Gov. Code, §12960, subd. (d); *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63.) This statute of limitations "must be liberally interpreted in favor of both allowing attempts at reconciliation and ultimately resolving claims on the merits." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 108.) The doctrine of equitable tolling serves that end in FEHA cases. (*Ibid.*)

That doctrine requires "'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citations.]" (*McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at p. 102.) Pursuing an administrative remedy during the statutory period, whether mandatory or not, "affords a

6

defendant notice of the claims against it so that it may gather and preserve evidence, and thereby satisfies the principal policy behind the statute of limitations" (*ibid*.)—to protect defendants "from stale claims and deteriorated evidence." (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924–925.) To show good faith, the plaintiff must not additionally delay the filing of a claim "until the statute on that claim ha[s] nearly run, even after crediting the tolled period." (*Id*. at p. 926.)

The fourth amended complaint alleges that appellant complained of "instances of harassment and unfair treatment" to an equal employment opportunity representative and the LAFD Professional Standards Division, and that in 2009 the Professional Standards Division referred his complaints to Internal Affairs and closed the case. Respondents argue, and the trial court agreed, that appellant's complaints to the Professional Standards Division did not equitably toll the statute of limitation because they were misconduct complaints against other employees rather than attempts at conciliation. Respondents argue further that the operative pleading does not sufficiently allege what incidents were included in appellant's internal complaints; they also argue that the tear gas incident could not have been included because appellant allegedly did not learn until 2010 that Moore had intentionally ordered the blowers turned off.

Assuming the fourth amended complaint insufficiently alleges equitable tolling, we conclude that the court abused its discretion in denying appellant leave to file his proposed fifth amended complaint. A plaintiff may make the requisite showing of a reasonable possibility of curing the defect by amendment either in the trial court or for the first time on appeal. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746–747.) Appellant's "Motion for Reconsideration . . . and to Allow Plaintiff to File the Proposed Fifth Amended Complaint" was in its substance a motion for leave to amend, not simply a motion for reconsideration. (*Sole Energy Co. v. Petrominerals Corp*. (2005) 128 Cal.App.4th 187, 193 [substance of a motion and not its label is determinative, and trial court has discretion to treat one type of motion as another based

7

on its substance and despite its labeling].) On appeal, we may consider appellant's proposed complaint to determine whether he can amend to plead equitable tolling.

Respondents rely on the trial court's comment on the record that appellant had had four opportunities to amend the complaint. The court was correct as to the allegations of discrimination, retaliation, and harassment that were the subject of Miller and Rueda's demurrers to the first two amended complaints. But appellant had no notice the statute of limitation would become an issue at the pleading stage until Miller and Rueda raised it for the first time in their demurrer to the third amended complaint, which was followed by respondents' motion for judgment on the pleadings. Because of the delay with which the statute of limitation defense was raised at the pleading stage, the fourth amended complaint was appellant's first fair opportunity to plead facts relevant to equitable tolling, and the proposed fifth amended complaint was his first fair opportunity to correct any defect in pleading those facts. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387 [amendment liberally allowed where the pleader did not have "'"*a fair prior opportunity to correct the substantive defect*"'"].)

Appellant's proposed fifth amended complaint and the attachments incorporated by reference indicate appellant filed a complaint with the Professional Standards Division pursuant to a complaint tracking system described in an internal bulletin, an authorized method of making discrimination and harassment complaints. (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 665 ["matters shown in exhibits attached to the complaint and incorporated by reference" may be considered on demurrer].) The Professional Standards Division coordinates the work of several units, including the Equal Employment Opportunity (EEO) Unit, Internal Affairs, and Litigation and Mediation. Appellant's December 2008 complaint of "harassment and unfair treatment" included the improper interrogation in December 2007 and the drill in early 2008; the January 2009 amendment included the reprimand in May 2007 and the blower incident in October 2008. In February 2009, appellant was interviewed by an investigator from the EEO Unit, and he was notified in April 2009 that

8

the EEO Unit had referred his complaint to the Internal Affairs Unit for further investigation. Three to six months later, he was told by telephone that the EEO Unit had closed the case, but he was given no information about its status in the Internal Affairs Unit. Based on his experience at the LAFD and the internal bulletin on which he relied, appellant reasonably believed Internal Affairs would investigate his complaint. In February 2010, appellant learned Internal Affairs had not interviewed the witnesses to the tear gas incident, which led him to believe it had not investigated his complaint at all. He filed his DFEH complaint four months later.

Respondents argue appellant's complaint to the Professional Standards Division was a "misconduct complaint," not covered by the doctrine of equitable tolling. We disagree. The proposed fifth amended complaint makes clear that appellant followed internal LAFD procedures for reporting perceived race discrimination and harassment. Both the allegations and the attachments indicate the Professional Standards Division coordinates more than just disciplinary matters. Appellant's internal complaint was initially referred to the EEO Unit, placing the LAFD on notice appellant sought "to enforce the same rights or obtain the same relief" (*Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1416) as his FEHA claims for race discrimination and harassment.

There is no indication appellant sought to have his internal complaints resolved exclusively through disciplinary action against his supervisors, and his concerns over perceived institutional discrimination do not lend themselves to resolution solely through such action. While disciplinary action against an offending employee may be a corrective measure an employer could take in appropriate cases, it is not the only method for remedying discrimination or harassment. (See, e.g., *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 53 [listing possible measures to prevent future harassment of complainant and others]; *Ryczek v. Guest Services, Inc.* (D.D.C. 1995) 877 F.Supp. 754, 760 ['"an employer . . . does not have to necessarily

9

discipline or terminate the offending employee as long as the employer takes corrective action reasonably likely to prevent the offending conduct from reoccurring"'].)

Respondents claim in passing that appellant unreasonably assumed his complaint was still open in Internal Affairs even after the Professional Standards Division closed its case. The proposed fifth amended complaint clarifies appellant was told the EEO Unit closed its case three to six months after referring it to Internal Affairs, but he was not told that Internal Affairs had closed its case. Appellant claims he reasonably believed one unit could transfer his complaint to another for further investigation, and there is no indication Internal Affairs had completed an investigation at the time the EEO Unit case was closed. As the precise procedure for investigating discrimination and harassment complaints by the EEO Unit and Internal Affairs is not clear from the face of the proposed pleading, the reasonableness of appellant's belief cannot be determined on demurrer. (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635 [demurrer is not appropriate procedural vehicle "for determining the truth of disputed facts or what inferences should be drawn where competing inferences are possible"].)

Respondents contend appellant could not have complained about the tear gas incident because it was not until February 2010 that he allegedly learned Moore had ordered the blowers turned off. But the proposed pleading specifically alleges appellant included that incident as an instance of harassment and unfair treatment in his January 2009 internal complaint. It also alleges that a proper investigation would have revealed Moore's involvement in the incident. Thus, even assuming appellant could not have specifically complained that Moore intentionally ordered the blowers turned off, the allegations are sufficient to show that the internal complaint gave the LAFD notice to investigate its cause and to uncover Moore's involvement.

Neither respondents' demurrer nor their brief on appeal challenged the sufficiency of the allegations supporting the claims of discrimination, harassment and retaliation. At oral argument, respondents' attorney argued for the first time that the factual allegations were insufficient to support appellant's conclusory allegation that his exposure to tear gas

was race based.  Although respondents may raise grounds on which the demurrer may properly be sustained for the first time on appeal (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031), issues not raised in appellate briefs are typically considered forfeited.  (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1326, fn.10; *Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.)  We do not consider the sufficiency of the allegations, and express no opinion on the merits of appellant's claims.  But we note that appellant's failure to allege his partner, Davis, was African-American does not necessarily defeat his harassment claim as a non-protected employee may be harassed for associating with a protected employee. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876–877.)

The proposed fifth amended complaint alleges that appellant reported instances of perceived discrimination and harassment to the fire chief, an equal employment opportunity consultant, and a member of the Board of Fire Commissioners between January 2007 and February 2008, before he filed his complaint with the Professional Standards Division in December 2008.  Respondents contend those reports are no more than "[i]nformal negotiations or discussions" that do not toll the statute of limitations since the equitable tolling doctrine applies only when the plaintiff seeks "an alternate remedy in an established procedural context."  (*Acuna v. San Diego Gas & Electric Co.*, *supra*, 217 Cal.App.4th at p. 1416, citing *65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal.App.4th 1047, 1063.)  Appellant's proposed pleading alleges the reports were internal administrative remedies authorized by the LAFD 2008 handbook, but it does not allege they covered the incidents that form the basis for the FEHA claims in this case, or that appellant was led to believe the LAFD or the City would take any action on them. Nevertheless, respondents do not address the timeliness of appellant's complaint to the Professional Standards Division about the 2007 incidents, and in any event a demurrer would not lie to a portion of a cause of action.  (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682.)

11

Since we conclude that the court erred in sustaining respondents' demurrer without leave to amend the allegations of equitable tolling, we find it unnecessary to address the parties' additional arguments about the application of the doctrine of continuing violation and the extension of the FEHA limitation period to three years for violations of Civil Code section 51.7.

## DISPOSITION

The judgment is reversed, and the trial court is directed to enter an order allowing appellant to file his fifth amended complaint.  Appellant is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.